**CRABILL, Extrx., Plaintiffs-Appellees, v. MONTGOMERY WARD & CO., INC., Defendant-Appellant.**

Ohio Appeals, Second District, Clark County.

No. 507.   Decided May 22, 1954.

Cole & Cole, Springfield, for plaintiffs-appellees.

George B. Smith, Springfield, David L. Dickson, Chicago, Illinois, for defendant-appellant.

## OPINION

By THE COURT:

This is an appeal on questions of law and fact from a judgment rendered in favor of the plaintiffs by the Common Pleas Court of Clark County, Ohio.

The parties agreed to submit the matter on the transcript of the record taken below. In their amended petition the plaintiffs, for their first cause of action, allege that on January 15th, 1941 plaintiffs, as landlords, leased to the defendant, as tenant, for a minimum period of 22 years and 3 months, certain property situated in the City of Springfield, Ohio, at an annual rental of six per cent of the purchase price paid for the property by the plaintiffs, to-wit: forty thousand dollars. Plaintiffs allege that by the terms of the lease the defendant agreed to rebuild and that the plaintiffs agreed to pay to the defendant the cost of rebuilding, or the sum of thirty-five thousand dollars, whichever would be the lesser sum; that the plaintiffs had the right to make payment direct to the defendant, or by furnishing to the defendant a binding commitment of a bank that said fund would be available for such purpose. Plaintiffs allege that they deposited securities of the value of $35,000 with the First National Bank and Trust Company of Springfield, Ohio, on or about February 20, 1941, and the said bank made the commitment, which was accepted by the defendant Plaintiffs allege that they made repeated demands on the defendant to rebuild,

which the defendant refused to do, and that the plaintiffs gave notice to the defendant that they had cancelled the leasehold agreement.

Plaintiffs in their second cause of action allege that the minimum rental to be paid was fixed at 6% of the original purchase price paid for the property by the plaintiffs, and, also 6% of the amount paid by the plaintiffs to the defendant for rebuilding, the additional rental to be paid on the first day of the month following the receipt of payment by the defendant of the money for such rebuilding. It is further alleged that plaintiffs made available, on February 20, 1941, said fund for rebuilding but that the defendant refused and continues to refuse to pay to the plaintiffs such additional rentals; that such rentals are due plaintiffs as damages.

Plaintiffs pray for an order of forfeiture of the lease, and immediate possession of the premises, and for damages in the amount of such overdue rent. After the trial the court permitted the plaintiffs to amend their petition by praying for an alternative remedy; that defendant be ordered to release the bank from its commitment to the defendant dated February 20, 1941, and to award damages to the plaintiffs for defendant's wrongful detention of plaintiffs monies and securities held in escrow by the bank.

The defendant, in its answer, admits entering into the lease but denies that it was required to rebuild. Defendant admits the commitment by the bank, but denies it received any money from the bank for the purpose of rebuilding. Defendant admits that it has not elected to rebuild to date; and denies that plaintiffs notified the defendant of the cancellation of the lease. The defendant further denies that plaintiffs are entitled to possession of the premises, or that there is anything due plaintiffs as additional rental, or as damages.

The evidence shows that immediately after the lease was executed and the commitment given by the bank stating that it held $35 000.00 for payment to the defendant for rebuilding cost, negotiations opened between the parties relative to plans, costs and prospects for rebuilding. These negotiations continued into 1942. Due to the onset of World War II material for construction was difficult to obtain. It is apparent that the difficulty in obtaining material caused the defendant to delay making a decision on the question of rebuilding. From 1942 to 1946 negotiations between the parties with respect to new construction were · suspended. In a letter dated March 17, 1942 the defendant stated to the plaintiffs that the matter of doing construction work was deferred and "nothing will be done for several months, and possibly not until the end of the War." Thereafter it appears that the parties, by common consent, dropped the matter during the war years. In the early part of 1946 negotiations were re-opened. On June 19, 1946, the defendant wrote the plaintiffs as follows: "Due to present Government restrictions all work pertaining to the enlargement of stores has been stopped." In October, 1948, plaintiffs, for the first time, retained counsel and thereafter negotiations were carried on largely by counsel for the plaintiffs.

At this juncture plaintiffs began to press for a modification of the terms of the lease, releasing the plaintiffs of the obligation to contribute toward the cost of rebuilding which suggestion was rejected by the de-

fendant. Other modifications of the lease were suggested by the defendant, which plaintiffs rejected. The record shows that Mr. Crabill held a conversation in Chicago on July 16, 1948 with Mr. Brown, who was employed by the defendant in its real estate department, in which Brown stated that the defendant would not build on the lot. Mr. Crabill testified on direct examination, "and I told him that I see no reason why the money shouldn't be returned to me. And he said he didn't see why it shouldn't be, either." On cross-examination Crabill testified that Brown said the defendant would not build at any time, and gave the reason, and that he (Crabill) believed Brown was telling the truth. Again Crabill held a conversation in Chicago on March 3, 1949 in which Mr. de Young, agent for the defendant, stated to Crabill that the defendant would not build and that the funds should be returned.

During this entire period of time the securities or money deposited with the bank by the plaintiffs were changed from time to time by the plaintiffs with the approval of the bank, but without the knowledge or consent of the defendant. The plaintiffs received the return by way of interest or dividends on the securities deposited with the bank. The deposit at all times was subject to the control of the plaintiffs, and the record reveals that the plaintiffs exercised such control from time to time. It does not appear that plaintiffs at any time made a demand on the bank for the release of the deposit, although the defendant stated several times to the plaintiffs that they could withdraw the deposit. Plaintiffs contend that they were obligated to maintain the deposit with the bank and that by reason of the delay the plaintiffs suffered the loss measured by the difference between the income received from the securities on deposit and 6% on $35,000.00, as additional rental. The lease gave the plaintiffs the option to either (a) deposit the $35.000.00 with the defendant, or (b) furnish the defendant a binding commitment of a bank, trust company, or insurance company. If the plaintiffs had exercised their option by depositing $35,000.00 with the defendant, under the terms of the lease, the defendant would have been required to pay the plaintiffs six per cent on said deposit from the date the deposit was made. But plaintiffs did not choose to deposit the $35,000.00 with the defendant, but decided on a bank commitment. But the issue for determination is: The plaintiffs, having elected to furnish a bank commitment, and the bank having required the plaintiffs to make the deposit, are the plaintiffs entitled to damages by reason of the length of time said deposit remained in escrow?

The principal issues in this case as made by the pleadings are determined by the provisions of the lease with respect to the obligation of the defendant to rebuild. The lease does not state the time within which the defendant shall rebuild. In fact, the lease does not require the defendant to rebuild. The defendant, under the terms of the lease, had the option to rebuild, or not rebuild. The plaintiffs contend that since the lease does not, by its terms, state the time within which the defendant is required to rebuild, the law would require defendant to do so within a reasonable time after the execution of the lease. This con-

tention assumes that the defendant was required to rebuild, which is not the case here.

The evidence shows that the defendant entered into possession, under the lease, and has paid $2,400.00 per year rental, as required by the lease, being 6% on $40,000.00, which was the purchase price paid for the property by the plaintiffs. The evidence does not show a breach of the terms of the lease by the defendant. Consequently, plaintiffs are not entitled to a cancellation of the lease and possession as claimed in its first cause of action; neither are they entitled to recovery as damages the difference between the income received by the plaintiffs from the securities on deposit and 6% on $35,000.00, or any other amount, as damages. It is clear that now the plaintiffs are entitled to withdraw the deposit from the bank, since the defendant has stated, not only in this action but prior to the commencement of this action, that it did not intend to rebuild. Whether the plaintiffs were entiled to withdraw the deposit at any earlier time, it is most certainly true that they were entitled to withdraw the deposit on the date the defendant stated it would not rebuild. To maintain the deposit with the bank thereafter was a voluntary act of the plaintiffs, for which the defendant cannot be made to respond in damages.

After giving due consideration to the terms of the lease with respect to the defendant's right to rebuild, it is questionable whether the defendant was required to exercise its option to rebuild or not to rebuild within a reasonable length of time. Section 8a of the lease in part provides:

The Tenant at its own expense may make **from time to time** any alterations, additions and improvements in and to the premises which it may deem necessary or suitable for the conduct of business therein, * * *."

Section 26 of the lease in part provides:

"It is understood that the Tenant may, pursuant to but without limitation of the privileges granted to it by Section 8a hereof, alter, improve, remodel and decorate the demised premises as it desires to make them more suitable for its use. * * *

"The Landlord agrees to pay to the Tenant the cost of the work performed pursuant to this section, or Thirty-five Thousand Dollars ($35,000.00), whichever shall be the lesser sum."

The character of the option given the defendant under the provisions of the lease just quoted, indicates an intention to give the defendant the right to do the things therein mentioned at any time the defendant found it feasible and convenient.

The fact that plaintiffs were required by the bank to make the deposit of $35,000.00 in order to furnish a bank commitment, soon after the execution of the lease, does not deprive the defendant of its right to exercise its option at any time it chooses to do so. This provision may be considered harsh but the plaintiffs are bound by their contract. It has been held that a court will not relieve a party competent to contract from the harsh provisions of an agreement in the absence of fraud or bad faith. **Ullmann v. May, 147 Oh St 468, 477; 72 N. E. (2d) 63.**

See also Vol. 19, Am. Jur., page 148, Section 147; Vol. 30, C. J. S., page 410, Section 62.

After giving due consideration to all of the evidence, the negotiations between the parties, the difficulty in securing material for construction during the War years, and for a time thereafter, if the defendant was required to exercise its option to rebuild within a reasonable length of time, we cannot say that the defendant failed to do so. This notice was given as early as July 16, 1948. We find no basis in law or in equity for allowing damages to plaintiffs for maintaining the deposit with the bank, after the defendant gave notice of its intention not to build. When the defendant notified the plaintiffs of its intention not to build, the obligation of the plaintiffs to furnish a commitment terminated. In keeping the commitment alive after that time, the plaintiffs acted voluntarily and the defendant cannot be held to respond in damages.

We make like rulings, on the admission and exclusion of the evidence, as was done by the court below.

Judgment for the defendant.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.